1  MARC E. MAYER (SBN 190969), mem@msk.com
   EMILY F. EVITT (SBN 261491), efe@msk.com
2  MITCHELL SILBERBERG & KNUPP LLP
   11377 West Olympic Boulevard
3  Los Angeles, CA  90064-1683
   Telephone:  (310) 312-2000
4  Facsimile:   (310) 312-3100

5  Attorneys for Plaintiffs Nicholas Assef and
   Lincoln Crowne & Company Pty Ltd

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NICHOLAS ASSEF, an individual; and LINCOLN CROWNE & COMPANY PTY LTD, an Australian corporation,<br><br>                Plaintiffs,<br><br>        v.<br><br>DOES 1-10,<br><br>                Defendants. | CASE NO. 3:15-CV-01960 MEJ<br><br>The Honorable Maria-Elena James<br><br>**NOTICE OF *EX PARTE* APPLICATION AND *EX PARTE* APPLICATION FOR AN ORDER ALLOWING PLAINTIFFS TO SERVE DEFENDANTS VIA E-MAIL AND BLOGPOST PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(f)(3); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[DECLARATION OF EMILY E. EVITT AND [PROPOSED] ORDER FILED CONCURRENTLY HEREWITH] |

Mitchell Silberberg & Knupp LLP
7539230.1

CASE NO. 3:15-CV-01960 MEJ
**NOTICE OF *EX PARTE* APPLICATION AND *EX PARTE* APPLICATION;
MEMORANDUM OF POINTS AND AUTHORITIES**

**NOTICE OF *EX PARTE* APPLICATION**

PLEASE TAKE NOTICE that Plaintiffs Nicholas Assef and Lincoln Crowne & Company Pty Ltd ("Plaintiffs") hereby apply *ex parte* pursuant to Local Rule 7-10 for leave to serve Defendant Doe 1 via e-mail and blogpost pursuant to Federal Rule of Civil Procedure 4(f)(3).

Good cause exists for the relief sought.  Defendants are the anonymous owners and operators of an infringing and defamatory blog hosted by Google's Blogger's service.  Plaintiffs have undertaken extensive and exhaustive efforts to determine Defendants' identities, but have been unable to do so.  Plaintiffs, however, have determined that Defendants likely are located either in Singapore or Australia.  Therefore, service pursuant to Rule 4(f)(3) is proper because Defendant Doe 1 is located outside the United States, and there is no international agreement prohibiting e-mail service in Singapore or Australia.  Finally, e-mail and blogpost service is reasonably calculated to provide notice under the circumstances because Doe 1 and the other Defendants actively concealed their identities, leaving these as the only means of contacting them.  If Plaintiffs' application for alternative service is not granted, Plaintiffs will have no means of moving forward with their case and no recourse against Defendants' infringing and defamatory speech.

This Application is based upon this *Ex Parte* Application, the attached Memorandum of Points and Authorities, the accompanying declaration of Emily F. Evitt, the Complaint in this action, Plaintiffs' previous *ex parte* applications (Docket Nos. 8, 16, 18, 20, & 22), and such other and further oral or documentary evidence and legal memoranda as may be presented at or before any hearing on this application.

DATED: March 25, 2016                    RESPECTFULLY SUBMITTED,

                                                            MARC E. MAYER
                                                            EMILY F. EVITT
                                                            MITCHELL SILBERBERG & KNUPP LLP


By:  /s/ Marc E. Mayer
      Marc E. Mayer
      Attorneys for Plaintiffs Nicholas Assef and
      Lincoln Crowne & Company Pty Ltd

Mitchell Silberberg & Knupp LLP
7539230.1

1   CASE NO. 3:15-CV-01960 MEJ
NOTICE OF *EX PARTE* APPLICATION AND *EX PARTE* APPLICATION;
MEMORANDUM OF POINTS AND AUTHORITIES

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................................1

II. BACKGROUND ....................................................................................................................1

    A. Plaintiffs Lincoln Crowne and Nicholas Assef ..........................................................1

    B. Defendants' Blog ........................................................................................................2

    C. The Australian Action and the U.S. Action ................................................................2

    D. Discovery Into Defendants' Identities in the U.S. Action ..........................................3

III. ARGUMENT .........................................................................................................................5

    A. Service by E-mail is Permitted by FRCP 4(f)(3) and Regularly Granted. ................5

    B. The Recent *Wilens* Case Endorses E-mail and Blogpost Service In These Circumstances. ............................................................................................................7

    C. Service by E-mail and Blogpost is Proper in This Case. ...........................................9

IV. CONCLUSION ....................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bank Julias Baer & Co. Ltd. v. WikiLeaks*,
    No. C 08-00824 JSW, 2008 U.S. Dist. LEXIS 14758 (N.D. Cal. Feb. 13, 2008) ........................7

*Craigslist, Inc. v. Temple*,
    No. C 09-04738 JW, 2010 U.S. Dist. LEXIS 144411 (N.D. Cal. May 20, 2010) ....................6, 9

*Craigslist, Inc. v. Troopal Strategies, Inc.*,
    No. C 09-04741, 2010 U.S. Dist. LEXIS 144409 (N.D. Cal. Nov. 24, 2010) .............................6

*Facebook, Inc. v. Banana Ads*,
    LLC, 2012 U.S. Dist. LEXIS 42160 (N.D. Cal. Mar. 27, 2012) ..................................................9

*Goes Int'l, AB v. Dodur Ltd.*,
    No. 14-CV-5666 LB, 2015 U.S. Dist. LEXIS 50394 (N.D. Cal. Apr. 16, 2015) ......................10

*Rio Props. v. Rio Int'l Interlink*,
    284 F.3d 1007 (9th Cir. 2002) ...............................................................................5, 6, 10, 11

*U.S. v. First Coast Meat & Seafood*,
    452 F. Supp. 2d 1348 (2006) ......................................................................................................9

*Wilens v. Automattic Inc.*,
    No. C 14-02419 LB, 2015 U.S. Dist. LEXIS 14054 (N.D. Cal. Feb. 5, 2015) ...............7, 8, 9, 10

*Williams-Sonoma Inc. v. Friendfinder, Inc.*,
    No. C 06-06572, 2007 U.S. Dist. LEXIS 31299 (N.D. Cal. April 17, 2007) .............................7

*Wright v. S. Mono Hosp. Dist.*,
    631 F. Supp. 1294 (E.D. Cal. 1986) .........................................................................................11

**OTHER AUTHORITIES**

Fed. R. Civ. P.
    Rule 4(f) .......................................................................................................................5, 6, 9, 11

Hague Service Convention art. 1, Nov. 15, 1965,
    20 U.S.T. 361 ............................................................................................................................10

Mitchell
Silberberg &
Knupp LLP

7539230.1

ii          CASE NO. 3:15-CV-01960 MEJ
**NOTICE OF *EX PARTE* APPLICATION AND *EX PARTE* APPLICATION;
MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiffs bring this *ex parte* application seeking leave from the Court to serve Defendants by the only means possible – e-mail and posting to Defendants' blog. Unless the Court grants this request, Plaintiffs will have no redress from the infringing and defamatory speech that they have been trying to remove for nearly nine years. In the Ninth Circuit, service by e-mail on a foreign defendant is permitted if (1) leave is granted by the court, and (2) such service is not prohibited by any international agreement. Courts in the Northern District of California regularly grant leave for service by e-mail where, as here, e-mail is the only way of reaching an elusive foreign defendant. Indeed, just last year, a Northern District of California court granted leave to serve an anonymous defendant by e-mail where, as in this case, plaintiff had made repeated efforts to identify and locate defendant, but had found only the means to contact him by e-mail. Furthermore, service by e-mail satisfies due process and is reasonably calculated to give Defendants notice under the circumstances because Defendants have actively concealed their identities, and e-mail and blogpost is the only way to reach them. And at the same time, Defendants have affirmatively used their e-mail address and blog to engage in and undertake the conduct at issue in this lawsuit.

## II. BACKGROUND

### A. **Plaintiffs Lincoln Crowne and Nicholas Assef.**

Plaintiff Lincoln Crowne is a boutique investment bank that provides advice on corporate transactions and specific strategic engagements. Plaintiff Nicholas Assef is the founder and executive director of Plaintiff Lincoln Crowne. Complaint ¶¶ 7, 9.

Plaintiff Lincoln Crowne owns the following trademarks (collectively the "Lincoln Crowne Trademarks"):

Lincoln Crowne & Company (USPTO Reg. No. 4107955)

Lincoln Crowne & Company (Australian Reg. No. 1423961)

Lincoln Crowne (Australian Reg. No. 1423960)

lincolncrowne (Australian Reg. No. 142175)

Additionally, Plaintiff Lincoln Crowne owns and has operated a website located at lincolncrowne.com. Complaint ¶¶ 7, 8.

Mitchell Silberberg & Knupp LLP

7539230.1

1   CASE NO. 3:15-CV-01960 MEJ
**NOTICE OF *EX PARTE* APPLICATION AND *EX PARTE* APPLICATION;
MEMORANDUM OF POINTS AND AUTHORITIES**

**B.     Defendants' Blog.**

This case concerns an infringing and defamatory blog located at www.lincolncrowne.blogspot.com (the "Blog"), which was posted in 2007.  Complaint ¶¶ 11, 14; Declaration of Emily F. Evitt ("Evitt Decl.") ¶ 2.  The Blog bears the heading, "Beware Lincoln Crowne & Company" and the subheading "Warning Warning Warning – Nick Assef."  The text of the Blog includes unsubstantiated personal attacks on Plaintiff Assef, as well as on his company.  Defendants used Plaintiff's Lincoln Crowne trademark as their Blogger username, and thus "LINCOLNCROWNE" appears both in the Blog's URL and on the Blog itself under the heading "About Me."  Defendants had no authorization whatsoever to use the Lincoln Crowne Trademarks.  Complaint ¶ 12 & Ex. A.

Defendants posted the Blog anonymously.  They have no affiliation with Plaintiffs.  Rather, Plaintiffs are informed and believe that Defendants are individuals who were upset about the performance of a private investment and posted false statements on the Blog in retaliation.  Complaint ¶ 13.

When one types "Lincoln Crowne blogspot" or "Nicholas Assef blogspot" into the search engine Google, the Blog appears on the first page of search results.  Evitt Decl. ¶ 3 & Ex. A.  Thus customers and potential customers searching for information about Mr. Assef and his business are greeted with false, derogatory comments about Plaintiffs.  Consequently, the Blog has caused and is continuing to cause damage to Plaintiffs and their reputations.  The Blog has caused Mr. Assef extreme embarrassment, humiliation, and emotional distress, and has detrimentally affected his health and well-being.  Evitt Decl. ¶ 4.  Furthermore, Plaintiffs have reason to believe that the Blog has caused them to lose clients, and thus significant revenue, and it has also hurt Plaintiffs' ability to recruit employees.  Complaint ¶ 19; Evitt Decl. ¶ 4.  Indeed, Mr. Assef was forced to move Lincoln Crowne's website to www.lcc.asia in order to avoid confusion with the offending Blog.  Evitt Decl. ¶ 4.

**C.     The Australian Action and the U.S. Action.**

Mr. Assef has submitted over 30 complaints to Google requesting removal of the Blog; he submitted 10 or more in the first two years the Blog was posted.  Google repeatedly refused to

remove the Blog.  Complaint ¶ 14; Evitt Decl. ¶ 5 & Ex. B.  On or about January 7, 2014, Plaintiffs filed a defamation lawsuit against Google in the Supreme Court of New South Wales, Australia.  Complaint ¶ 15.  In response to the Australian lawsuit, on or about January 18, 2014, Google removed the Blog across all Blogger domains.  *Id.*

However, in or around September 2014, Plaintiffs discovered that Google had reinstated the Blog in the .com domain.  Complaint ¶ 16.  In other words, although the Blog is no longer available at the Australia-specific URL www.lincolncrowne.blogspot.com/au, it is viewable at the primary URL www.lincolncrowne.blogspot.com.  *Id.*  Notwithstanding the Australian litigation, Google now refuses to take down the Blog without a U.S. court order.  *Id.* ¶ 17.

Plaintiffs filed this lawsuit on April 30, 2015 to seek redress for Defendants' unlawful conduct, and to bring an end to the continuing harm that Defendants are causing to Plaintiffs.  Complaint ¶ 1; Evitt Decl. ¶ 2.

### D.   Discovery Into Defendants' Identities in the U.S. Action

When Plaintiffs filed the Complaint, they were unaware of Defendants' identities, and therefore sued them as Does 1-10.  Plaintiffs have since made numerous attempts to determine who posted the anonymous Blog.  Evitt Decl. ¶ 7.  After filing the Complaint, Plaintiffs filed an *ex parte* application for leave to take limited immediate discovery to determine Defendants' identities.  Docket No. 8; Evitt Decl. ¶ 8.

The Court granted, in part, Plaintiffs' *ex parte* application, and issued an order permitting Plaintiff to serve a subpoena on Google "to obtain the Defendants' names, addresses, telephone numbers, and email addresses, as well as documents sufficient to identify the IP addresses used to create, operate, and access the Blog…."  Docket No. 9.  Plaintiffs promptly served a subpoena on Google, and Google timely responded.  In its response, Google provided only a single piece of usable identifying information about Defendants: the Gmail e-mail address used to register the Blog:  lincolncrowne@gmail.com (the "Gmail Address").  Docket No. 16; Evitt Decl. ¶ 8.

Google, in addition to owning and operating the "Blogger" service that Defendants used to create the Blog, also operates Gmail.  Consequently, Plaintiffs filed a second *ex parte* application, and sought leave from the Court to serve a second subpoena on Google.  Docket No. 16.  The

1  Court granted Plaintiffs' *ex parte* application on October 27, 2015 (Docket No. 17), and that same
2  day Plaintiffs issued a subpoena to Google, with a response deadline of November 30, 2015,
3  subject to compliance with the Court's order.  *See* Docket 18.  Google responded.  Evitt Decl. ¶ 9.
4         In response to their second subpoena to Google, Google disclosed a Yahoo e-mail address,
5  nick@yahoo.com (the "Yahoo Address"), for the user who created the Gmail Address that had
6  been used to register the offending Blog.  Evitt Decl. ¶ 9.  Plaintiffs' counsel subsequently e-
7  mailed the Yahoo Address and the Gmail Address, asking if Defendants would accept service of
8  the Complaint or contact Plaintiffs' counsel to discuss the case.  Evitt Decl. ¶ 10 & Ex. D.
9  However, Plaintiffs' counsel received a bounce-back from the Yahoo Address stating the e-mail
10 address did not exist.  Evitt Decl. ¶ 10 & Ex. E.  Plaintiffs' counsel did not receive a bounce-back
11 from the Gmail Address, thus indicating that presumably the account remains active and can be
12 used to communicate concerning the Blog.  However, Defendants did not respond to Plaintiffs' e-
13 mail.  Evitt Decl. ¶ 10.
14        Additionally, in its second subpoena response, Google provided the IP address used to
15 create the Gmail Address (the "IP Address").  Evitt Decl. ¶ 11.  Plaintiffs' counsel traced the IP
16 address to Singapore.  Evitt Decl. ¶ 11 & Ex. F.  Plaintiff Nicholas Assef then researched the IP
17 Address and traced it to a large public area in Singapore (circa 90 Bras Basah Road, Singapore).
18 The area features a number of food outlets that offer free wireless Internet, such as Burger King.
19 Evitt Decl. ¶ 12 & Ex. G-I.  Consequently, it is likely that the blogger who created the Gmail
20 Address, which was then used to register the offending Blog, went to great lengths to remain
21 anonymous.  It will likely be impossible to identify him based on the IP Address.  However, based
22 on the Singapore IP address used by Defendants and Plaintiffs' own location in Australia,
23 Plaintiffs have determined that Defendants are in all likelihood based outside the United States, in
24 Singapore or Australia.
25        Finally, on a parallel track to their efforts to determine Defendants' identities, Plaintiffs'
26 counsel reached out to Google and requested removal of the Blog on the grounds that it was
27 infringing, constituted corporate impersonation, and had been inactive for many years.  Evitt Decl.
28 ¶ 6 & Ex. C.  Google reiterated that it would not remove the Blog without a court order.  *Id.*

Mitchell Silberberg & Knupp LLP

7539230.1

4     CASE NO. 3:15-CV-01960 MEJ
**NOTICE OF *EX PARTE* APPLICATION AND *EX PARTE* APPLICATION;
MEMORANDUM OF POINTS AND AUTHORITIES**

## III. ARGUMENT

The Court should grant Plaintiffs' application to serve Defendant Doe 1 ("Doe") via e-mail to the Gmail Address and by posting a link to the Summons and Complaint on the offending Blog, pursuant to Federal Rule of Civil Procedure 4(f)(3). Doe is an individual, likely residing in a foreign jurisdiction, who has deliberately sought to conceal his identity and location. The Gmail Address and Blog are Plaintiffs' only means of reaching him. At the same time, Doe used the Gmail Address to create the Blog (and to publish the content at issue thereon), and it is the only real e-mail address connected to the Blog – and thus the only means by which Google, or anyone else, can communicate with Doe concerning the Blog. Assuming Doe is located in Singapore or Australia, neither of those jurisdictions prohibits service by e-mail.

### A. Service by E-mail is Permitted by FRCP 4(f)(3) and Regularly Granted.

Federal Rule of Civil Procedure 4(f) sets forth methods for serving an individual in a foreign country, such as via the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention"), by means prescribed by the law of the foreign country, or by letters rogatory. Specifically, Rule 4(f)(3) states: "Unless federal law provides otherwise, an individual … may be served at a place not within any judicial district of the United States: … (3) by other means not prohibited by international agreement, as the court orders."[1] A plaintiff need not attempt service by another method before seeking leave from the Court to serve defendant pursuant to FRCP 4(f)(3); plaintiff must only "demonstrate that the facts and circumstances of the present case necessitate[] the district court's intervention." *Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002). The Ninth Circuit has made clear that "court-

---

[1] The other methods of service of an individual in a foreign country are: "(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice: (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction; (B) as the foreign authority directs in response to a letter rogatory or letter of request; or (C) unless prohibited by the foreign country's law, by: (i) delivering a copy of the summons and of the complaint to the individual personally; or (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt." FRCP 4(f).

directed service under Rule 4(f)(3) is as favored as service under Rule 4(f)(1) or Rule 4(f)(2)." *Rio Props.*, 284 F.3d at 1015.

In *Rio Properties* ("*Rio Props*"), the Ninth Circuit held for the first time that service by e-mail was permissible under FRCP 4(f)(3). Defendant in *Rio Props* was the operator of gambling websites that infringed plaintiff's trademarks. Plaintiff was unable to locate a physical address at which to serve defendant, however, plaintiff's investigator discovered that defendant preferred communication through defendant's email address. The district court granted plaintiff leave to serve the defendant via e-mail, and the Ninth Circuit affirmed. 284 F.3d 1007, 1016.

The Ninth Circuit analyzed the federal rules and reasoned, "As obvious from its plain language, service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement. No other limitations are evident from the text." *Rio Props.*, 284 F.3d at 1014. The court acknowledged that there was an additional due process requirement: "the method of service crafted by the district court must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.*, 284 F.3d at 1016 (citations and quotations omitted). Applying those principles, the court reasoned that defendant "has embraced the modern e-business model and profited immensely from it. In fact, [defendant] structured its business such that it could be contacted *only* via its email address." *Id.* at 1017-18 (emphasis in original). The Ninth Circuit concluded that "when faced with an international ebusiness scofflaw, playing hide-and-seek with the federal court, email may be the only means of effecting service of process." *Id.* at 1018. Thus, the service by e-mail was appropriate under the circumstances.

Since *Rio Props*, numerous courts in the Northern District of California have granted leave for service by e-mail pursuant to Rule 4(f)(3). *See, e.g., Craigslist, Inc. v. Temple*, No. C 09-04738 JW, 2010 U.S. Dist. LEXIS 144411, at *4 (N.D. Cal. May 20, 2010) (granting leave for service via e-mail where "[Defendant] does not rely on a physical address to operate his business but rather operates his business entirely through email or other electronic methods of communication, and that the only contact information available on [Defendant's] website is an e-mail address"); *Craigslist, Inc. v. Troopal Strategies, Inc.*, No. C 09-04741, 2010 U.S. Dist.

Mitchell Silberberg & Knupp LLP

7539230.1

6    CASE NO. 3:15-CV-01960 MEJ
**NOTICE OF *EX PARTE* APPLICATION AND *EX PARTE* APPLICATION;
MEMORANDUM OF POINTS AND AUTHORITIES**

LEXIS 144409, at *3 (N.D. Cal. Nov. 24, 2010) (granting leave for service by e-mail to "[defendant,] a Panamanian corporation, because it regularly utilizes email in operating its business."); *Bank Julias Baer & Co. Ltd. v. WikiLeaks*, No. C 08-00824 JSW, 2008 U.S. Dist. LEXIS 14758, at *5 (N.D. Cal. Feb. 13, 2008) (granting leave to serve by e-mail where "Plaintiffs have presented evidence that physical addresses for the WikiLeaks Defendants cannot be effectively located"); *Williams-Sonoma Inc. v. Friendfinder, Inc.*, No. C 06-06572, 2007 U.S. Dist. LEXIS 31299, at *4-5 (N.D. Cal. April 17, 2007) (granting leave for service by e-mail of foreign website owners where "physical addresses for a number of the named defendants cannot be located or … defendants have refused to accept service.").

### B. The Recent *Wilens* Case Endorses E-mail and Blogpost Service In These Circumstances.

Just last year, in *Wilens v. Automattic Inc.*, No. C 14-02419 LB, 2015 U.S. Dist. LEXIS 14054 (N.D. Cal. Feb. 5, 2015), a district court in the Northern District of California granted leave for service by e-mail in a case that is on all fours with the present action. Defendant in *Wilens* was, as here, an anonymous blogger engaged in trademark infringement and defamation. Defendant created several online websites on which he posted defamatory comments about plaintiff, an attorney, and plaintiff's law firm. Specifically, defendant had two websites and six blogs, one of which was hosted by Google's Blogger service, as in this case. As here, the names of defendant's websites incorporated plaintiff's trademarks, which defendant did deliberately to create confusion and divert search engine traffic from clients and potential clients searching for plaintiff. 2015 U.S. Dist. LEXIS 14054, at *1-5. As in this case, plaintiff "diligently attempt[ed] to identify and locate Doe 1 so that he may serve him or her."[2] *Id.* at *7. Specifically:

- Plaintiff served a subpoena on the registrar of the first website, from which he received an e-mail address. Plaintiff corresponded with someone at this e-mail address and complained about the trademark violations.

---

[2] Plaintiff originally named Google and Automatic as defendants, but dismissed them and proceeded only against a Doe. Thus, as here, the case was only against an anonymous defendant.

- Plaintiff determined the IP address hosting the first website, and traced it to a server in Russia. Plaintiff discovered the second website was using the same IP address.
- Plaintiff determined that both the first and second website were registered using privacy services designed to actively conceal the owners' identities.
- Plaintiff learned that the first website had been moved from its original registrar to a new registrar. Plaintiff reported abuse to the new registrar, but was told there was nothing it could do to help him.
- Plaintiff discovered that the registrar of the second website was a Russian domain registration company. Plaintiff filed an abuse report with that company, but it failed to take any action.
- Plaintiff served a subpoena on Google regarding the Blogspot page (as Plaintiffs did here). From Google, plaintiff received the e-mail address associated with the Blogspot page.
- Plaintiff subpoenaed the host of the other blogs (WordPress blogs), Automattic, and obtained the e-mail address associated with those blogs.
- Plaintiff determined the IP addresses used to create the Blogspot and WordPress blogs, and subpoenaed the companies associated with those IP addresses. The subpoena results ultimately led plaintiff to another privacy protection company that had been used to conceal the defendant's identity. Plaintiff subpoenaed that company, but it could not provide any information about the defendant.

2015 U.S. Dist. LEXIS 14054, at *6-14.

Following these thorough and fruitless efforts to determine defendant's identity, plaintiff sought leave of the court to serve defendant via e-mail and by posting a link to the Summons and Complaint on the offending websites and blogs. The court found that "[plaintiff] has made substantial efforts to locate and identify Doe 1, to no avail. He has served six subpoenas and submitted three abuse-related complaints on companies related to the registration of the allegedly offending websites and blogs, and although he has received some information in response, it has not been sufficient to pin-point Doe 1's location or identify him or her." *Id.* at *16. The court

noted, however, that plaintiff had been able to reach defendant, and had corresponded with him via one of the e-mail addresses. *Id.* Thus, because e-mail was the only means of reaching the anonymous defendant, the court granted plaintiff's request for alternative service. *Id.* at *17.[3]

### C. Service by E-mail and Blogpost is Proper in This Case.

As in *Wilens*, Plaintiffs must be granted leave to serve Doe by e-mail and by posting a link to the Summons and Complaint on the offending Blog. Plaintiffs have satisfied all of the requirements for alternative service under Rule 4(f)(3):

First, Plaintiffs have evidence that Doe is based in Singapore or Australia. The Gmail Address used to create the Blog was created from the IP Address in Singapore. Plaintiffs, in turn, are based in Australia, as are a large number of Lincoln Crowne's customers, and Plaintiffs' work is focused on Australia, thus there is also a good chance that Doe is in Australia. Defendant's location need not be known with certainty to authorize service under Rule 4(f)(3). *See Temple*, 2010 U.S. Dist. LEXIS 144411, at *4 (granting leave to serve by e-mail where "[Defendant] likely resides in Canada"); *Wilens*, 2015 U.S. Dist. LEXIS 14054, at *14 (noting that the anonymous defendant "appears to be located in Russia"). Neither Singapore nor Australia is party to an international agreement prohibiting service by e-mail. Australia is a member of the Hague Convention, which does not prohibit service by e-mail. *See* Hague Conf. on Private Int'l Law, Status Table 14, http://www.hcch.net/index_en.php?act=conventions.status&cid=17 (last visited Mar. 25, 2016); *Facebook, Inc. v. Banana Ads*, LLC, 2012 U.S. Dist. LEXIS 42160, at *6-7 (N.D. Cal. Mar. 27, 2012) (collecting cases; granting motion for service by e-mail). Singapore is not a member of the Hague Convention, and Plaintiffs are not aware of any international agreement prohibiting service by e-mail in Singapore. *U.S. v. First Coast Meat & Seafood*, 452 F. Supp. 2d 1348, 1349 (2006) (noting that Singapore had not "acceded to the Hague Service Convention"); U.S. Dep't of State, Country Information: Singapore, http://travel.state.gov/content/travel/en/legal-considerations/judicial/country/singapore.html (last visited March 25, 2016).[4]

---

[3] Plaintiff also sought leave to serve by publication, which was moot in light of the court's ruling.

[4] Furthermore, the Hague Convention does not even apply where, as here, the address of the person to be served is unknown: "This Convention shall not apply where the address of the person (…continued)

**NOTICE OF *EX PARTE* APPLICATION AND *EX PARTE* APPLICATION;
MEMORANDUM OF POINTS AND AUTHORITIES**

Second, as in *Wilens*, Plaintiffs have taken diligent and thorough measures to determine Doe's identity, and have come up empty-handed. Like in *Wilens*, Plaintiffs served multiple subpoenas, and traced the IP address at issue, but were unable to determine Doe's identity. Instead, as in *Wilens*, Plaintiffs obtained a single piece of useful information, an e-mail address (the Gmail Address). Moreover, as in *Wilens*, Plaintiffs pursued all of their leads until they hit a dead end: Plaintiffs subpoenaed Google about the Blogspot page, and obtained the Gmail Address. Then Plaintiffs again subpoenaed Google for information about the Gmail Address, and they got the Yahoo Address and the IP Address. Unfortunately, the Yahoo Address bounced back, and the IP Address traced to a large public area in Singapore. Thus, Plaintiffs' only means of contacting Doe is via the Gmail Address. As in *Wilens*, Plaintiffs reached out to Doe via the Gmail Address. Doe did not respond, but Plaintiffs' counsel did not receive a bounce-back nor any other indication that the Gmail Address is inactive. *Goes Int'l, AB v. Dodur Ltd.*, No. 14-CV-5666 LB, 2015 U.S. Dist. LEXIS 50394, at *7 (N.D. Cal. Apr. 16, 2015) (permitting service by e-mail where plaintiff "sent test emails to this address and did not receive any notification that the emails were not delivered."). And given that Plaintiffs' counsel's e-mail to the Gmail Address requested that Doe contact Plaintiffs' counsel to discuss this lawsuit and warned that Plaintiffs would seek leave to serve them by e-mail, it is not particularly surprising that Doe chose to ignore it. Furthermore, analogous to *Wilens*, Plaintiffs have also reported abuse – here, Plaintiffs and their counsel sent over 30 complaints to Google. Thus, just as in *Wilens*, Plaintiffs' only recourse is to serve the Complaint by e-mail and by posting a link to the Summons and Complaint to the Blog.

Third and finally, service via e-mail to the Gmail Address and posting to the Blog is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Rio Props.*, 284 F.3d at

---

(…continued)
to be served with the document is not known." Hague Service Convention art. 1, Nov. 15, 1965, 20 U.S.T. 361; *see, e.g., Goes Int'l, AB v. Dodur Ltd.*, No. 14-CV-5666 LB, 2015 U.S. Dist. LEXIS 50394, at *6 (N.D. Cal. Apr. 16, 2015).

1016 (citations and quotations omitted).  As discussed above, e-mail to the Gmail Address and posting to the Blog is Plaintiffs' only means of contacting Doe.  Such service is reasonably calculated to give notice under the circumstances because Doe and the other Defendants went to great lengths to conceal their identities: (a) registering the Blog using an e-mail address (the Gmail Address) apparently created especially for that purpose; (b) registering the Gmail Address using a fake or defunct e-mail account (the Yahoo Address); and (c) creating the Gmail Address in a public area in Singapore so the IP Address would be untraceable.  Therefore, because Doe and the other Defendants have actively hidden, Plaintiffs must be permitted to serve Doe using the only usable information they have provided, the Gmail Address.  Indeed, it is equitable to serve Doe via the Gmail Address because Doe created that e-mail address for the specific purpose of posting content to the Blog.  As in *Rio Props*, "[defendant] structured its business such that it could be contacted *only* via its email address." *Rio Props.*, 284 F.3d at 1018 (emphasis in original).  Consequently, it is only fair that the same e-mail address used to create the Blog can be used to receive complaints about it.  Moreover, service via e-mail to the Gmail Address and posting to the Blog is reasonable given the relief sought in this case, the most important component of which is the removal of the infringing and defamatory Blog.  Complaint, Prayer. *See Wright v. S. Mono Hosp. Dist.*, 631 F. Supp. 1294, 1305 (E.D. Cal. 1986) ("Due process is regarded as a flexible concept and its procedural requirements vary upon the particular deprivation.").  Finally, service is reasonable under the circumstances because if Plaintiffs are not granted leave to serve the Complaint by e-mail, they will have no means to proceed with this case, and thus no recourse against Defendants' infringing and defamatory speech.

//
//
//
//
//
//
//

Mitchell Silberberg & Knupp LLP

7539230.1

11   CASE NO. 3:15-CV-01960 MEJ
NOTICE OF *EX PARTE* APPLICATION AND *EX PARTE* APPLICATION;
MEMORANDUM OF POINTS AND AUTHORITIES

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their application for leave to serve the Complaint via e-mail and positing to the Blog, pursuant to Rule 4(f)(3).

DATED: March 25, 2016

RESPECTFULLY SUBMITTED,

MARC E. MAYER
EMILY F. EVITT
MITCHELL SILBERBERG & KNUPP LLP


By: /s/ Marc E. Mayer
Marc E. Mayer
Attorneys for Plaintiffs Nicholas Assef and
Lincoln Crowne & Company Pty Ltd

Mitchell Silberberg & Knupp LLP

7539230.1

12   CASE NO. 3:15-CV-01960 MEJ
NOTICE OF *EX PARTE* APPLICATION AND *EX PARTE* APPLICATION;
MEMORANDUM OF POINTS AND AUTHORITIES